UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| ARCADIA GAS STORAGE, LLC | CIVIL ACTION NO. 6:18-CV-01521 |
| VERSUS | JUDGE JUNEAU |
| UNDERWRITERS AT LLOYDS OF LONDON | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Pending before the court is the motion to dismiss for failure to state a claim, which was filed on behalf of the defendants, Underwriters at Lloyds of London Syndicates 2987, 3000, 1274, 780, 1221, 1200, and 2121. (Rec. Doc. 7). The motion is opposed. The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Oral argument was held on February 21, 2019. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, this Court recommends that the motion to dismiss be DENIED.

## Background

This lawsuit is about insurance coverage. The plaintiff, Arcadia Gas Storage, LLC, sued to enforce the contractual obligations allegedly undertaken by the defendants, certain Underwriters at Lloyds of London, under Policy No. NG01119A18, which covered the time period from May 1, 2018 to May 1, 2019.

The policy is an Operators Extra Expense ("OEE") Policy, which includes a specific coverage part, designated as "Section 1A," affording "Control of Well Insurance."[1] The following factual summary is based on the allegations set forth in the plaintiff's complaint. For purposes of the pending motion, these facts are assumed to be true.

The plaintiff owned and operated the Arcadia Storage Facility-GHI Well located in Louisiana. In April 2018, logs performed on the well indicated that the bottom portion of the de-watering string had broken off. In late May, it was decided that a snubbing operation would be undertaken to add new joints of 8 5/8" casing and restore the depth of the de-watering string. This project began on June 1. On June 22, a tight spot was encountered while snubbing the new casing into the hole. The next day, while attempting to work the de-watering string past the obstruction, the snubbing crew started equalizing pressure between blowout preventer ("BOP") No. 1 and BOP No. 2. Gas began to blow and escape from the top of the casing joint and the access window within the snubbing stack, allowing gas to escape to the surface. The snubbing crew immediately evacuated the snubbing unit. The crew then activated the lower and upper pipe rams (BOP No. 7 and BOP No. 3, respectively), which did not stop the flow. The crew then activated the blind/shear rams (BOP No. 4), which eventually stopped the escape of gas from the well.

---

[1] Rec. Doc. 1-1 at 24.

This incident allegedly resulted in damage to the surface equipment and the collapse of the casing string, as well as damage to pipes and other well components. Arcadia submitted a proof of loss to the Underwriters in July 2018 in the amount of $471,032, submitted a supplemental proof of loss in September in the amount of $3,218,131, and submitted a second supplemental proof of loss in the amount of $625,752 in October, for a total of more than $4 million in losses and expenses that Arcadia claims is covered by the policy. In November 2018, the Underwriters denied coverage, taking the position that the incident did not meet the policy's definition of a "Well Out of Control."

Arcadia filed suit against the Underwriters, seeking to enforce the insurance contract and to recover damages and statutory penalties. In response, the Underwriters filed the instant motion to dismiss, contending that the plaintiff has not stated a claim upon which relief can be granted.

## **The Contentions of the Parties**

In support of their motion to dismiss, the defendants argued that the subject well was never "out of control" and, consequently, coverage under the relevant insurance policy was never triggered. The plaintiff contends, to the contrary, that the allegations of the complaint are sufficient to state a cause of action for coverage under the relevant insurance policy.

## Law and Analysis

### A. The Applicable Standard

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is properly granted when a defendant attacks the complaint because it fails to state a legally cognizable claim.[2] When considering such a motion, a district court must limit itself to the contents of the pleadings, including any attachments thereto,[3] accept all well-pleaded facts as true, and view the facts in a light most favorable to the plaintiff.[4] However, conclusory allegations and unwarranted deductions of fact are not accepted as true,[5] and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[6]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[7] The allegations must be sufficient

---

[2] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[3] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[4] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[5] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498.

[6] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[7] *Bell Atlantic v. Twombly*, 550 U.S. at 570.

"to raise a right to relief above the speculative level,"[8] and "the pleading must contain something more. . . than. . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[9] "While a complaint. . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[10] If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[11]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] "[D]etermining whether a complaint states a plausible claim for relief. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[13]

---

[8]  *Bell Atlantic v. Twombly*, 550 U.S. at 555.

[9]  *Bell Atlantic v. Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

[10]  *Bell Atlantic v. Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted; emphasis added). See, also, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11]  *Bell Atlantic v. Twombly*, 550 U.S. at 570.

[12]  *Ashcroft v. Iqbal*, 556 U.S. at 678.

[13]  *Ashcroft v. Iqbal*, 556 U.S. at 679.

Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[14]

**B.     The Insurance Policy**

The insurance policy, a copy of which was attached to the plaintiff's complaint, states that the Underwriters will "reimburse the insured for actual costs and/or expenses incurred by the insured. . . in regaining control of all well(s) insured hereunder which get out of control. . . [and] for removal of wreckage and/or debris of property" resulting from an insured loss.[15]  The policy defines the term "Well Out of Control" as follows:

> A well(s) shall be deemed to be out of control when there is a continuous unintended, uncontrolled flow of drilling fluid, oil, gas and/or water from the well, above or below the surface of the earth and/or water bottom or when it is declared to be out of control by the appropriate regulatory authority.[16]

The policy does not define the terms "continuous," "unintended," or "uncontrolled."

---

[14]     *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. at 556).  See, also, *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008).

[15]     Rec. Doc. 1-1 at 24.

[16]     Rec. Doc. 1-1 at 32.

## C.     **The Applicable Law**

A federal court sitting in diversity must apply state substantive law and federal procedural law.[17] Because this is a diversity case, Louisiana's substantive law must be applied.[18] The insurance policy states that it "shall be governed by and construed in accordance with" the laws of Texas.[19] Under Louisiana law, a contractual choice-of-law provision is generally presumed to be valid and enforceable.[20] Furthermore, the parties agree that there are no substantive differences between Louisiana and Texas law with regard to the interpretation of insurance policies. Therefore, there is no dispute concerning the legal principles to be applied in resolving the issue now before the court.

Under both Louisiana law and Texas law, insurance policies are considered to be contracts, and they are interpreted to determine the common intent of the parties expressed in the instrument.[21] Under the laws of both states, an insurance contract is to be construed as a whole, with each provision in the policy interpreted in light

---

[17]     *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008).

[18]     See, e.g., *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009).

[19]     Rec. Doc. 1-1 at 4.

[20]     Louisiana Civil Code Article 3540; *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 250 (5th Cir. 2001).

[21]     *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009); *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003).

of the other provisions so that each is given meaning.[22] Under Texas law, the words not defined in an insurance policy are to be understood "according to their plain and ordinary meaning."[23] Similarly, under Louisiana law, the "words and phrases used in an insurance policy are to be construed using their plain, ordinary[,] and generally prevailing meaning, unless the words have acquired a technical meaning."[24] Under the laws of both states, ambiguity is found only when there are two different but reasonable interpretations of a policy provision, and then ambiguous provisions must be construed in favor of coverage.[25] Under Louisiana law, when the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent.[26] In other words, "[a]n insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its

---

[22] *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d at 577; *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d at 580.

[23] *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d at 577.

[24] *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d at 580.

[25] *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d at 577; *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d at 580.

[26] Louisiana Civil Code Article 2046; *Peterson v. Schimek*, 98-1712 (La. 03/02/99), 729 So. 2d 1024, 1028; *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So.2d 981, 985 (La. 1991).

provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[27]

**D.     The Plaintiff's Complaint States a Claim for Coverage**

This Court finds that the plaintiff's complaint states a claim for coverage under the relevant insurance policy. The facts alleged in the complaint, accepted as true, fall within the scope of the "Control of Well Insurance" set forth in Section 1A of the Underwriters' policy.

For a well to be "out of control" under the policy, there must be a flow of drilling fluid, oil, gas, or water from the well that is (1) continuous, (2) unintended, and (3) uncontrolled or (4) declared to be out of control by the appropriate regulatory authority. Here, it is undisputed that gas was flowing in an unintended manner at the time of the incident underlying the lawsuit, and there is no allegation that a regulatory authority ever deemed the well to be out of control. The parties' dispute therefore centers on whether the unintended gas flow was "continuous" and "uncontrolled."

The Underwriters contend that the gas flow was not continuous because it was interrupted by the activation of the blind shear rams, and they contend that the flow was not uncontrolled because it was restrained by the activation of the blind shear

---

[27]     *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994).

rams.[28] In other words, the Underwriters contend that any unintended flow that can be controlled by the use of the well's blowout preventers can neither be continuous nor uncontrolled. This Court finds the Underwriters' interpretation of the words "continuous" and "uncontrolled" to be illogical at best. If the Underwriters' interpretation of those words were adopted, the only situation in which the policy would be triggered would be when an unintended flow from a well was impossible to control with blowout preventers no matter how long it took for the flow to stop or how much oil, gas, or water escaped before the flow was controlled. If the Underwriters had meant to exclude from coverage any unintended flow that was eventually controlled by the use of blowout preventers – or by other means – they could have included language to that effect in the policy.

In its briefing, the plaintiff discussed what it described as the "industry standard" well control insurance policy, which does include language excepting from coverage situations in which a well's blowout preventers or other equipment on site promptly stops the unintended flow.[29] The jurisprudence confirms the existence of insurance policies containing such provisions. In one reported decision, for example, the insurance policy at issue stated that "a Well shall be deemed out of control. . . when there is an unintended subsurface flow of oil, gas, water, and/or

---

[28] Rec. Doc. 7-1 at 13-14.

[29] Rec. Doc. 16 at 10-11.

fluid from one subsurface zone to another subsurface zone via the bore of the Well, which cannot be controlled by the blowout preventer. . . or other equipment required."[30] In another decision, the insurance policy provided this definition: "For purposes of this Policy, a 'well' will be deemed to be a Well Out Of Control only when there is an unintended flow of drilling fluid, oil, gas or water. . . which cannot be controlled by the blowout preventer, storm choke, "wellhead equipment" or other equipment [required in the policy], or when declared by the appropriate. . . governmental regulatory authority."[31] In a third decision, the policy language was similar to that suggested by Arcadia as constituting the industry standard, stating that a well "shall be deemed to be out of control only when. . . an unintended flow. . . cannot promptly be. . . stopped by use of equipment on site and/or the blowout preventer, storm chokes or other equipment required by the Due Diligence and Warranties clauses herein; or. . . stopped by increasing the weight. . . of drilling fluid or by the use or conditioning material in the well(s). . . or. . . safely diverted into

---

[30] *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 515 (5th Cir. 2015).

[31] *Eagle Oil & Gas Co. v. Travelers Property Cas. Co. of America*, No. 7:12-cv-00133-O, 2014 WL 3732448, at *3 (N.D. Tex. July 29, 2014).

production. . . or. . . declared to be out of control by the appropriate regulatory authority."[32] The policy at issue in this lawsuit contains no such limiting language.

Furthermore, despite the Underwriters' contention that an unintended flow must be impossible to stop with wellsite equipment, the Underwriters' policy does not address any temporal aspect of the unintended flow. Therefore, it is conceivable that an unintended flow that is continuous and uncontrolled for even a brief period of time is covered by the policy. If the Underwriters had intended that an unintended flow must last for some particular length of time in order for it to trigger coverage under the policy, they could have included limiting language in the policy. But no such language is set forth in the subject policy. Therefore, even a brief unintended flow of gas that is continuous and uncontrolled as long as its lasts, such as that described in the plaintiff's complaint, would be sufficient to trigger coverage.

The fact that the insurance policy requires the insured to install blowout preventers, to "use every endeavor to control the well or stop the escape of flow," and to "exercise due care and diligence in the conduct of all operations" does not change the policy's definition of a "well out of control." Certainly, these provisions of the policy must be read in conjunction with the "Control of Well Insurance" provision of the policy, but there is no indication in the policy that an insured's

---

[32] *Taylor Energy Co. LLC v. Underwriters at Lloyd's*, No. 09-6383, 2010 WL 4553482, at *2 (E.D. La. Oct. 29, 2010).

compliance with its contractual due diligence obligations was intended to render the "Control of Well Insurance" provision meaningless. However, that is the result that would be achieved if the policy were interpreted in the manner suggested by the Underwriters.

This Court finds that the interpretation of the insurance policy supported by the Underwriters is not reasonable and would result in absurd consequences. Accordingly, that interpretation is rejected. Therefore, this Court finds that the plaintiff's complaint alleged the existence of an unintended, continuous, and uncontrolled gas flow sufficient to state a claim for coverage under the relevant insurance policy.

The Underwriters further argued that the plaintiff's claims for breach of contract, bad faith, and breach of statutory duties "require that Arcadia prove coverage under the policy as a necessary element."[33] In other words, the Underwriters argued that if the plaintiff failed to allege a claim for coverage because the incident did not fall within the scope of the policy's provision regarding "Control of Well Insurance," its other claims were also fatally flawed. Having found to the contrary that the facts alleged in Arcadia's complaint fall within the scope of the "Control of Well Insurance" section of the policy, it is not necessary to address the

---

[33] Rec. Doc. 7-1 at 18.

validity of its claims for breach of contract, bad faith, and statutory penalties. Further discussion of those claims is pretermitted.

## Conclusion

For the foregoing reasons, it is recommended that the defendants' motion to dismiss for failure to state a claim (Rec. Doc. 7) should be denied.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[34]

---

[34] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).

Signed at Lafayette, Louisiana, this 11th day of March 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE